IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH GALOSKI, | ) | CASE NO. 1:14 CV 553 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| STANLEY BLACK & DECKER, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |

This matter is before the Court on Defendant Applica Consumer Products, Inc.'s

("Applica") Motion for Summary Judgment. (ECF #51). Applica also filed a separate brief in

support of its motion. (ECF #53). Plaintiff filed an opposition to the motion, and Applica filed a

Reply in further support. (ECF #59, 61). This motion is now fully briefed and ripe for

consideration.

**<u>Facts</u>**[1]

Plaintiff, Deborah Galoski brings this suit on behalf of herself and others similarly situated to recover damages arising from the purchase of an allegedly defective product.[1]  She alleges breach of warranty and fraud against Applica, for its role as manufacturer, packager, and marketer of "electronic" or "ultrasonic" pest repellers.  Ms. Galoski does not allege that the individual products she purchased were damaged, broken, or otherwise unable to operate.  Rather, she contends that these devices do not, and cannot,  repel pests under any circumstances, "no matter where they are placed or how they are used."  (ECF #59 at 19).  She claims that this product "provides no benefits whatsoever even when operating as it is designed to." (ECF #59 at 2).

In her First Amended Complaint, filed October 20, 2014, Ms. Galoski limited her claims to breach of express warranty and fraud based on advertising statements made on the packaging of the product.   Defendant Stanley Black & Decker was voluntarily dismissed from the action on January 21, 2015, leaving Applica as the sole defendant.  In a joint status report filed January 20, 2015, Defendants voiced an objection to providing discovery related to the merits of the claims and sought an order restricting discovery to the class certification issue.  Plaintiffs opposed this request.  (ECF #39).  On January 22, 2015, at a status conference, the Court ordered that class certification discovery should commence.  (ECF #42).  The parties understood this to be a

---

[1]The factual summary is based upon the parties' statements of facts.  Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are noted to be in dispute and will be accepted in the light most favorable to the Plaintiff, the non-moving party, for purposes of this motion.

[1]

 The issue of class certification has been briefed separately and will be addressed in a separate opinion.

granting of the bifurcation request and they, therefore, did not proceed with merit discovery after this point.  (ECF #59-3, ¶9).  Defendants have not yet responded to many of the Plaintiff's requests for merit based discovery, specifically they have not provided any discovery addressing the efficacy of the ultrasonic pest repellers, nor have the parties commenced any expert discovery.  (ECF #59-3, ¶¶ 10-12).  Plaintiff's counsel attests that Plaintiff has retained an expert for use in this case, but that due to the bifurcation, their expert discovery process has not yet commenced.  Nonetheless, Applica filed a motion for summary judgment based on purely legal arguments and the deposition testimony of the Plaintiff.[2]

## **Summary Judgment Standard**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[2]

 Generally, a pre-discovery motion for summary judgment is premature, as granting summary judgment "'absent any opportunity for discovery' offends concepts of fundamental fairness."  *Harris v. Jiangsu ASG Earth Envtl. Prot. Sci. & Tech. Co., Ltd*, 2014 U.S. Dist. LEXIS 132154, at *6-7 (E.D. Ky. Sept. 18, 2014) (quoting *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. Ohio 1994).  The Parties in this case have yet to conduct any meaningful discovery on the merits of the Plaintiff's claim, therefore, it the Court is limited in the scope of its summary judgment review.  The Defendant has raised some legal issues and has attempted to prove through Ms. Galoski's deposition testimony that she did not suffer any harm from the alleged causes of action. The Court will address these issues, but it would be unjust to make a ruling that goes to the actual efficacy of the product without first allowing full discovery on that issue.

together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence

-4-

that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"  *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify.  Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.  Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## Analysis

I.  Breach of Express Warranty

There are two ways to bring a warranty claim under Ohio law against a manufacturer in the absence of contractual privity: (1) under the express warranty provisions of the Uniform Commercial Code ("UCC"); or (2) under the common law tort of "implied warranty."[3]  *Risner v. Regal Marine*

---

[3]

Implied warranty in tort "is a common law cause of action that imposes liability upon a manufacturer or a seller for breach of an implied representation that a product is of "good and merchantable quality, fit and safe for its ordinary intended use." *Sirlouis v. Four Winds Intern. Corp*., No. 1:10cv00469, 2012 U.S. Dist. LEXIS 43347, 2012 WL 1068709, at *15 (N.D. Ohio March 29, 2012 (citing White v. DePuy, Inc., 129 Ohio App.3d 472, 718 N.E.2d 450 (Ohio App. 12 Dist. 1998)).  There is no clear indication whether Ohio law would recognize a implied warranty in tort when there is a valid, enforceable, written

*Industries, Inc.*, 8 F.Supp.3d 959, 988, 995 (S.D. Ohio 2014).   In this case, Plaintiff has asserted a cause of action under only the first theory: express warranty, which is governed by the UCC.

To establish a claim for breach of express warranty under Ohio law, the plaintiff must prove the following elements: (1) the item in question was subject to a warranty; (2) the item did not conform to the warranty; (3) the seller was given a reasonable opportunity to cure any defects; and (4) the seller failed to cure the defects within a reasonable period of time or after a reasonable number of attempts. *Temple v. Fleetwood Enters, Inc*., 133 F. App'x 254, 268 (6th Cir. 2005).  The creation of an express warranty can occur in one of three ways: (1) an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain; (2) any description of the goods which is made part of the basis of the bargain; or (3) any sample or model which is made part of the basis of the bargain.   Each of these types of representations creates an express warranty that the product sold will conform to the representation. Ohio Rev. Code § 1302.26(A); *see also, Risner* at 989.   Formal words such as "warrant" or "guarantee" are not required to create an express warranty.  Ohio Rev. Code § 1302.26(B).

An advertisement can create an express warranty when a statement therein fulfills the requirements of Ohio Rev. Code §1302.26(A).  However, a statement that merely affirms the value of the goods or purports to be the seller's opinion or commendation of the goods does not create a

---

warranty between the parties, as well.  *See*, *Risner v. Regal Marine Industries, Inc.*, 8 F.Supp.3d at 995.  There is also some question as to whether this common law tort has been displaced by the UCC's cause of action for implied warranty of merchantability, which does require privity between the seller and buyer.  *See, McKinney v. Bayer Corp.*, 744 F.Supp. 2d 733, 757 (citing *Curl v. Volkswagon of Am., Inc.*, 114 Ohio St.3d 266, , 871 N.E. 2d 1141, 1147 (Ohio 2007).  We need not reach these issues, however, as Plaintiff has not raised a claim for implied warranty in tort.

-7-

warranty. Ohio Rev. Code § 1302.26(B). Such a statement become a "basis of the bargain" if it has been relied upon as one of the inducements for purchasing the product. *McKinney v. Bayer Corp.*, 744 F.Supp. 2d 733,  (N.D. Ohio 2010).

A.  Existence of a warranty

In this case, Plaintiff alleges that the description of the product, as contained on the packaging, created a warranty that the product would conform to that description.  She has provided evidence in the form of a copy of the product packaging showing that Applica represented the product as a "pest repeller," represented that the product "drives out mice, spiders, cockroaches, and other pests;"represented that "[h]ousehold pests are repelled [by ultrasound] because they cannot adapt to the constantly changing array of ultrasonic waves emitted by the unit;" and, represented that the "wave signals disrupt the pests' nervous systems, greatly affecting their feeding and communication habits, thereby forcing them to leave the area." The product is bought and sold for the sole purpose of pest control.  Therefore, these statements would logically form the "basis of the bargain" as consumers would rely on these representations when deciding whether to buy the product for their pest control needs.  Further, Ms. Galoski testified that she relied on these representations when purchasing the product.  Plaintiff, therefore, has provided sufficient evidence to show that the cited representations constitute statements of warranty under *McKinney*, 744 F.Supp. 2d 733, and under Ohio Rev. Code §1302.26(A).

B.  Conformity to the Warranty

Plaintiff has also provided some evidence, despite not having a full opportunity to conduct discovery on the issue, that could show that the product did not conform to these representations. Specifically, Plaintiff has cited to an article published by the University of Nebraska that concluded

-8-

that "while rodents may temporarily avoid areas "covered" with high-frequency sounds, rodents habituate to them and will feed or nest alongside operating devices." This could be found to contradict Applica's assertion on the packaging of its device that household pests cannot adapt to the constantly changing array of ultrasonic waves emitted by the unit. Further, the article maintains that "[u]ltrasonics, as demonstrated by many tests (Greaves and Rowe 1969, Meehan 1976), will not drive established rodents out of buildings or areas." (ECF #59 at 8-9).

Plaintiff also cites to a press release issued by the Federal Trade Commission ("FTC") in 2001 explaining that "any reaction by rodents to ultrasound would be temporary at best because rodents become accustomed to ultrasound and will return to their nesting or feeding areas even in the presence of the ultrasonic device." (ECF #59 at 9). In addition, there is evidence that the FTC filed complaints against some pest repellers stating that "ultrasound devices do not control insects." If true, this finding could contradict Applica's representation that its ultrasonic pest repellers drive out spiders, cockroaches, and other insects. Plaintiff also asserts that they have asked for discovery of any studies or scientific evidence that would support Defendant's representations, and has asserted that she has retained an expert to address her claims in more scientific detail. Such information has not yet been identified because the Defendant asked to stay discovery on the merits of the case.

Defendant has offered no evidence whatsoever to contradict the claims made in the University of Nebraska article, or in the FTC press release or complaints. They cite only to testimony from Ms. Galoski's deposition which they characterize as an admission that since using the Applica product Ms. Galoski has "not seen any live rodents in her home and has not seen any cockroaches in her home." Ms. Galoski, however, did testify that her cat brought her a dead mouse

in her home,[4] that she continued to see spiders in her home, and continued to get ladybugs in her home, including in the rooms in which the product had been placed. (Galoski Tr. P. 144:2-3; 143:15-21; 144:9-11; 144-146; 147:6-17). Defendant may argue that these sightings were the result of improper usage, or that Ms. GALOSKI had an unreasonably high expectation of the product and should have been happy with the results despite these encounters, but that is not an issue that can be decided on summary judgment and certainly not without further discovery on the merits of this issue. Plaintiff has produced sufficient evidence to raise a genuine question of fact as to the efficacy of the product at this stage of the proceedings, especially considering discovery has not been completed on this issue.

    C. <u>Notice of Defect/Opportunity to Remedy Defect</u>

Applica contends that Plaintiff is barred from bringing a breach of express warranty claim because she did not provide them with prior notice of the defect prior to bringing suit. Ohio's version of the Uniform Commercial Code states that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy." Ohio Rev. Code § 1302.65©. This requirement serves two purposes: (1) to provide an opportunity for negotiation and settlement; and, (2) to minimize the possibility of prejudice to the seller by allowing an opportunity to cure the defect, investigate the claim, properly defend, or minimize damages while the facts are fresh in the minds of the parties. *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 826 (6th Cir. 1978).

    Plaintiff does not contest that she failed to provide prior notice of the alleged defect to the

---

[4]

  As the parties agree that ultrasonic pest repellers do not kill rodents, it can be assumed that the cat found and killed a live mouse in the home that had not been driven out by the ultrasonic repellant.

-10-

Defendant before filing suit.  However, she argues that pre-litigation notice is not an absolute requirement for recovery under a breach of express warranty claim under Ohio law.  She also argues that Applica had actual or constructive notice of the alleged defect from other sources, and that notice would have served no purpose under the circumstances of this case because there was no way for Applica to cure the defect.

The Ohio Supreme Court has held that the notice requirement under Ohio Rev. Code § 1302.65© is not absolute.  Notice can be inferred from the circumstances of the case, and notice under proper circumstances (which have not been identified by the Court) can be satisfied by the filing of a complaint.  *Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Co.*, 42 Ohio St.3d 40, 41-43, 537 N.E.2d 624 (Ohio 1989).  Further, courts have found that notice is satisfied when the Defendant is aware of the alleged defect through other channels and that pre-litigation notice need not come from the Plaintiff who actually filed suit.  *See, e.g., Martin v. Ford Motor Co.*, 765 F.Supp. 2d 673, 683 (E.D. Pa. 2011).[5]

If ever there were a "proper circumstance" to allow satisfaction of the notice requirement to be fulfilled by the filing of a suit  (a circumstance the Ohio Supreme Court has stated does exist) this case would appear to include the variables that would justify such an allowance.  In this case we have a Plaintiff who is private consumer,[5] and she has submitted some evidence, that if developed or verified during full discovery could support a finding that Applica had actual or constructive

---

[5]Pennsylvania has the same pre-filing notice requirement as in Ohio law.

[5]
To this Court's knowledge, there has never been a case when a commercial buyer has been relieved of the pre-filing notice requirement, even when there has been no evidence or allegation of prejudice by the Defendant.  However, courts have cited the commercial status of plaintiffs as a major reason no such relief should be granted.  This infers that private consumers might receive more leeway in this regard.

-11-

knowledge of the alleged defect prior to the filing of this suit.  Further, the one year limited warranty provided by Applica, due to the nature of the alleged defect, would fail of its essential purpose as the defect is not in the individual item purchased but within the design and efficacy of the product line in general.  In other words, if Plaintiff's claims are true, no repair would cure the defect, and no replacement would solve the problem.  Therefore, requiring notice and a prior opportunity to cure the defect would be wholly futile.   In addition, Applica has alleged no prejudice stemming from Plaintiff's failure to provide pre-litigation notice of the alleged defect.  Applica does not contend that it could have repaired or replaced the product with a working version, nor do they allege that they would or could have negotiated a settlement prior to the filing of the case.  Rather, they allege that the product worked as it was expected and designed to work, which as addressed above remains a genuine question of material fact that cannot be resolved at this stage of the litigation.  Finally, the product is continually being produced and sold and there is, therefore, no risk of a loss of evidence due to the passage of time.  Because Plaintiff has conceded that the only question at issue is whether the product as designed is capable of performing its function, no other facts are really at issue.  If the product is capable of doing what the packaging represents, Plaintiff loses her case.  If it is not, then the individual facts of her case including manner of usage, her compliance with instructions, and the level of pest infestation in her home are of no import.

Therefore, because discovery is not yet complete and we cannot affirmatively determine whether  Defendant had constructive or actual knowledge of the alleged defect prior to the filing of this lawsuit, neither can we find in Defendant's favor on this issue.   Ohio law leaves open the possibility that under the right circumstances the filing of a lawsuit can take the place of prior notice of breach.  Such circumstance might be found where, as in this case, Plaintiff is a private consumer

and not a commercial buyer, and where there is a possibility that Defendant is alleged to have been aware of the defect long before the lawsuit was ever filed. Plaintiff has alleged sufficient facts to suggest the possibility that Defendant had actual or constructive notice of the defect, and without the benefit of full discovery has still submitted some evidence that could tend to support this possibility. Defendant has offered no evidence to the contrary. Therefore, Plaintiff is at least entitled to full discovery on the issue of notice and Defendant's prior knowledge of the alleged breach of warranty. For all of the above reasons, Defendant's motion for summary judgment on the claim of breach of express warranty is denied.

## II.  Common Law Fraud

Ohio law generally holds that breach of express warranty claims under the UCC are treated as claims based in contract.   See, e.g., *Holbrook v. Louisiana Pacific Corp.*, 533 Fed. Appx. 493, 496 (6th Cir. 2013);"[6]  *Risner v. Regal Marine Industries, Inc.*, 8 F.Supp.3d 959, 988, 995 (S.D. Ohio 2014) . Ohio law also holds that a the existence of a claim sounding in contract generally excludes

---

[6]

Implied warranty in tort "is a common law cause of action that imposes liability upon a manufacturer or a seller for breach of an implied representation that a product is of "good and merchantable quality, fit and safe for its ordinary intended use." *Sirlouis v. Four Winds Intern. Corp.*, No. 1:10cv00469, 2012 U.S. Dist. LEXIS 43347, 2012 WL 1068709, at *15 (N.D. Ohio March 29, 2012 (citing White v. DePuy, Inc., 129 Ohio App.3d 472, 718 N.E.2d 450 (Ohio App. 12 Dist. 1998)). There is no clear indication whether Ohio law would recognize a implied warranty in tort when there is a valid, enforceable, written warranty between the parties, as well. *See*, *Risner v. Regal Marine Industries, Inc.*, 8 F.Supp.3d at 995. There is also some question as to whether this common law tort has been displaced by the UCC's cause of action for implied warranty of merchantability, which does require privity between the seller and buyer. *See, McKinney v. Bayer Corp.*, 744 F.Supp. 2d 733, 757 (citing *Curl v. Volkswagon of Am., Inc.*, 114 Ohio St.3d 266, , 871 N.E. 2d 1141, 1147 (Ohio 2007). We need not reach these issues, however, as Plaintiff has not raised a claim for implied warranty in tort.

recovery under a theory of tort.  *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981); *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261 (Ohio Ct. App. 1996).  When the damage or loss resulting from a defective product does not involve harm to a person or property other than the defective item itself, "UCC remedies will generally be appropriate and exclusive for recovery of the damage to the defective product itself." *Chemtrol*, 42 Ohio St.3d at 50-51; *see also, Academic Imaging, LLC v. Soterion Corp.*, 352 Fed. Appx. 59 (6th Cir. 2009).

In addition, a Plaintiff cannot maintain an action for both warranty and fraud when the only injury alleged is the loss of the value of the allegedly defective product.  *See, e.g., Delahunt v. Cytodyne Techs.*, 241 F.Supp. 2d 827 (S.D. Ohio 2003); *Marine Direct v. Dougherty Marine, Inc.*, 2007 U.S. Dist. LEXIS 1414, at *6 (January 8, 2007).  Plaintiff has admitted that she has suffered no harm independent of her decision to purchase the product, and no loss beyond the price of the product she purchased.     (Galoski Depo. at 184).  She argues, however, that her decision to seek punitive damages creates a different harm recoverable only under the tort action of fraud.  Courts have found, however, that a claim for punitive damages does not create a separate loss that allows recovery under both contract and tort theories for the same harm.  *See, e.g, Wells Fargo Bank v. Fifth Third Bank*, 931 F.Supp. 2d 834, 839 (S.D. Ohio 2013)(tort claims arising of a contractual relationship must allege "actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of contract).  For these reasons, Plaintiff's fraud claim must be dismissed.


**Conclusion**


-14-

For the reasons set forth above, Defendant's motion for summary judgment (ECF #51) is GRANTED in part and DENIED in part.  Plaintiff's claim for fraud is dismissed with prejudice. Plaintiff's claim for breach of express warranty under the UCC is subject to further discovery.  The bifurcation order is terminated; full discovery on the remaining issue should commence immediately. Status remains set for October 20, 2015 at 9:30 a.m.  IT IS SO ORDERED.


　　　　　　　　　　　　　　　　　　　　　 /s/ Donald C. Nugent
　　　　　　　　　　　　　　　　　　　　　DONALD C. NUGENT
　　　　　　　　　　　　　　　　　　　　　United States District Judge


DATED:   August 28, 2015

-15-