IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH GALOSKI, | ) | CASE NO. 1:14 CV 553 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| STANLEY BLACK & DECKER, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |

The matter is currently before the Court on Defendant, Applica Consumer Products, Inc.'s ("Applica") Motion to Exclude the Testimony of Dr. Roger Gold (ECF #99), and Motion for Summary Judgment (ECF # 100). Plaintiff filed Briefs in Opposition to both motions, and Defendant filed Replies in support of its motions. (ECF #103, 106, 105, 107). The issues are now fully briefed and ripe for disposition. Applica contends that the testimony of Dr. Gold, the expert proffered by Plaintiff to provide opinion evidence on the efficacy of ultrasonic pest repellers in general, is not grounded in any reliable methodology and does not address the efficacy of the actual product at issue in this case. Therefore, it seeks to have his testimony excluded. If Dr. Gold's testimony is excluded, Applica argues that the case should be dismissed because Plaintiff has produced no other evidence that could support her contention that Applica's ultrasonic pest repellers do not and cannot perform as warranted on the product packaging. Plaintiff claims that Dr. Gold is an expert in the area of entomology and has conducted,

supervised, and reviewed a multitude of studies relating to the general efficacy of ultrasonic and other types of pest controls on repelling certain insects, and rodents.  Further, Plaintiff argues that even if Dr. Gold's testimony is excluded, she has provided other evidence, by way of her own testimony and other customer complaints, that the Applica pest repeller did not perform as warranted.

### I. Motion to Exclude Expert Testimony

#### A. Standard

The admission of expert testimony is governed by Fed. R. Evid. 702 and 703.  Federal Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.   This rule is to be broadly interpreted.  *Mannino v. Int'l Mfg. Co.*, F.2d 846, 849 (6th Cir. 1981).   "Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in

-2-

issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). The Court considers the following factors when determining reliability: "(1) whether the theory or technique has been tested and subjected to peer review and publication, (2) whether the potential rate of error is known, and (3) its general acceptance.'" *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002).

Pursuant to Fed. R. Evid. 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." The facts and data upon which the expert's opinion is based need not necessarily be admissible on their own. Fed. R. Evid. 703. "Unlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. Presumably, this relaxation of the usual requirement of firsthand knowledge -- a rule which represents 'a "most pervasive manifestation" of the common law insistence upon "the most reliable sources of information,"'-- is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592 (citations omitted). Plaintiffs bear the burden of showing by a preponderance of the evidence that the experts' testimony is admissible. *Daubert*, 509 U.S. at 579 & n.10.

### B. Analysis

Dr. Gold has opined that ultrasonic devices "would not," "cannot and do not," and "will

not be effective to" drive out pests, and that they "actually can attract cockroaches due to the heat generated by the electric commercial devices." (ECF #99-1, PageID 1809-10). He has also stated his opinion that the studies Defendant relied on to determine efficacy of its product are not scientifically sound. Dr. Gold is unquestionably an accomplished entomologist, and has extensive experience in various aspects of the pest control industry. There is also no question that he has formed strong opinions as to the potential efficacy of ultrasonic pest repellers, in that he appears to firmly believe that they, as a class of devices, are not and cannot be effective in "driving out" pests of any kind. Unfortunately for the Plaintiff, however, there has been no evidence presented in this case that provides a well-grounded scientific basis to elevate his opinion on this particular question to the level of reliability required for expert testimony. "Although qualified as an expert in one area of expertise, [an expert witness] may be precluded from offering opinions beyond that area of expertise, or that are not founded on a reliable methodology." *Wellman v. Norfolk & W. Ry.* Co., 98 F. Supp. 2d 919, 924 (S.D. Ohio 2000).

### 1. Product's Ability to Drive Out Pests

Dr. Gold's opinion on the products ability to drive out pests does not appear to be scientifically valid and his reasoning and methodology cannot be properly applied to the facts at issue in this case. In coming to his opinion, Dr. Gold testified that he has never tested ultrasonic pest repellers sold by Applica. (ECF #99-2, PageID 1859, 1871, 1889, 1891-92). Although he did work on studies of various types of electronic pest repellers from 1982 through 2005 or 2006, (ECF #99-2 PageID 1861), not all of the studied devices were ultrasonic, and none of them were

manufactured by Applica.  (ECF #99-2, PageID 1861-62, 1892-93). Further, prior to 1984, none of the testing involved sweep technology, which is claimed to be utilized in the Applica product, and Dr. Gold testified that he did not provide any reports based on his testing of ultrasonic devices after 1984.  (ECF #99-2, PageID 1882, 1893; ECF #105, PageID 2081).

Dr. Gold testified that he did not do the research related to the current case; he did not design any experiments to test the product in this case; and that his opinion in this case was based on a review of "the summaries of the data" from studies that were not derived from the Applica product.  (ECF #99-2, PageID 1872, 1881 ).  Some of the testing he relied on involved products that were not even ultrasonic devices, and none of the testing appears to have included a controlled test in a situation that allowed the pests an escape from the effects of the device.  (ECF #99-2, PageID 1882-83, 1886).

Dr. Gold recognized during his deposition that each manufacturer's device is a little bit different; that each has different features or attributes relating to the frequency, decibels, pulsing or sweeping of the sound; and, that these differences could affect the efficacy of the products. (ECF #99-2, PageID 1862, 1885, 1888).   He could not recall which of these attributes was present, or at what level, in the devices he tested, and did not know which of the features or attributes were contained in the Applica product.  (ECF #99-2, PageID 1862-63, 1889-91).  He also admitted that although he thought the Applica decibels and frequency were "not unlike other things that we had closely examined," they were not "identically the same."  (ECF #99-2, PageID 1865).  The devices that were tested in the studies he relied on had a different frequency peak

kilohertz range than did the Applica (Black and Decker) product.  (ECF #99-2, PageID 1902). Even where an expert has based his opinion on scientific studies, his opinion may not be admissible if those studies do not 'fit' the facts of the case.  See, Pride v. BIC Corp., 218 F.3d 566, 577 (6th Cir. 2000).  In addition, Dr. Gold admitted that many of the studies that he and others relied on when concluding ultrasonic devices did not "drive out" pests did not have a control, and others had no replications.  Dr. Gold testified that in the absence of a control, or in the absence of replications, the data from a test was not scientifically reliable.  (ECF #99-2, PageID 1903).   Expert testimony is not admissible if it is not scientifically reliable.

    Dr. Gold also testified that when he conducted tests on a product that used sweep technology similar to that employed by the Applica product, the testing showed that cockroaches did, in fact, respond to the ultrasound emitted by the device.  It appeared, in fact, that they moved away from the device.  (ECF #99-2, PageID 1882, 1883).  Although Dr. Gold contends that this does not prove that the device was a deterrent, it certainly does not prove that it had no deterrent effect. In a differently designed test performed by Dr. Gold, cubes containing the roaches and testing devices were equipped with pitfall traps.  In this test, the roaches again showed significant additional movement when exposed to the device, and there was a "significant increase in the rate of cockroach catch in the [pitfall traps of the ] cubes with an active ultrasound device." (ECF #99-2, PageID 1883).  Dr. Gold interpreted this as proof that ultrasound increased activity amongst the roaches but did not conclude that it deterred them or drove them away.  He testified that this was because "they stayed- [t]he same number of roaches were there in the beginning and

the end." (ECF #99-2, PageID 1884;see also PageID 1888). However, based on the design of the test, as explained by Dr. Gold, it appears there was no way for them to escape the cube. Entering the pitfall trap was the closest option to exiting that was possible under the design of the experiment.[1]

Dr. Gold has completed a significant amount of research and testing on electronic pest control devices and their effect on specific pests. However, he has provided no information that would explain how his studies relate to the efficacy of the Applica product at issue in this case or its effects on the wide variety of pests that it claims to deter. Dr. Gold affirmatively stated that he has no data to show that "the Applica pest repellers that were branded as Black & Decker ultrasonic pest repellers. . . do not perform their intended function." (ECF #99-2, PageID 1907). There is no evidence to suggest that any of the experiments he conducted or reviewed showed with a reasonable degree of scientific certainty that a device with the Applica products specifications did not or could not deter the pests listed on the product's label.

### 2. Product's Potential to Attract Pests

Further, Dr. Gold's opinion that the Applica products could potentially attract pests rather than repel them, is based on his understanding that the Applica products contained a nightlight or

---

[1] This experiment was not actually designed to test whether the ultrasound device deterred or drove out pests. Rather, the claim made the product being tested was that the device could kill pests. This was the premise being testing and may account for why no escape route was integrated into the experiment's design. However, it still precludes any ability to test the device's ability to drive out pests, if the pests are not provided a way out in the testing design.

an extra electrical outlet. He admits, however, that he does not know whether the product used by Ms. Galoski had either of these features. He also admits that he has no idea whether the inclusion of these features changed the electrical specifications of this product. (ECF #99-2, PageID 1875). He acknowledges that many pests are deterred by, rather than attracted to light (ECF #99-2, PageID 1876); that he did not test the amount of light given off by the Applica product, even though the amount of light would affect any test results (ECF #99-2, PageID 1877); that he did not test whether spiders were attracted to the Applica product's light (Id.); that tests showing some insects are attracted to light were performed under different conditions than exist here (Id.); and, that there are no studies that he has reviewed or conducted that would suggest that the presence of an additional electrical outlet would attract insects (Id.).

In the end, Dr. Gold admitted that he could not testify with a reasonable degree of scientific certainty that any pets will be attracted to the ultrasonic pest repellers manufactured by Applica. (ECF #99-2, PageID 1877). Because he has no scientific basis to make such a statement, his opinion that the product could actually attract pests is inadmissible as expert testimony in this case.

### 3. Adequacy of Defendant's Testing

Dr. Gold has put forth other opinions, which, as explained by his deposition testimony, boil down to the belief that Defendant has not shown substantial scientific support for its position that electronic pest control devices are effective against general pest populations. (ECF #99-1, PageID 1808-09). He testified that his starting point in any case is "basically to assume that

something doesn't work until it can be proven that it does." (ECF #99-2, PageID 1871). In a civil case, however, the burden of proof of effectiveness is not on the Defendant. The Plaintiff must prove by a preponderance of the evidence that the product is not effective as warranted. It is not enough to say that there are defects testing and analysis Defendant relied on to support a finding of efficacy; Plaintiff must affirmatively show that the product does not conform to the warranty. *See, Steigerwald v. BHH, LCC*, 2016 WL 6962593, at *5 (N.D. Ohio, Nov. 29, 2016). Rather than opine on the failings of the manufacturer's scientific process, Plaintiff, must provide substantiated scientific studies that affirmatively show that this Applica product, or at least a product with the same specifications and features does not and cannot work. This she has not done.

Plaintiff has not met her burden of showing, by a preponderance of the evidence, that Dr. Gold has a scientifically valid opinion on the efficacy of the Applica device that would assist the trier of fact. Although he may have expertise in certain areas of entomology and has some experience studying various modes of pest control, his inference that these studies apply to all ultrasonic devices without exception is not based on the scientific method (ECF #99-2, PageID 1871), was not developed employing the same intellectual rigor that characterizes the practice in his field; and, is not based on "good grounds" within the methods of and procedures of science as required by *Daubert*. See, *Daubert*, 509 U.S. at 590; *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 152 (1999); *Newell v. Rubbermaid, Inc. v. Raymond Corp.,* 676 F.3d 521, 527 (6th Cir. 2012); *John v. Equine Services*, 233 F.3d 382, 389 (6th Cir. 2000); *In re Paoli R.R. Yard PCB*

*Litig.*, 35 F.3d 717, 744 (3rd Cir. 1994).  His opinions on this matter do not qualify as expert testimony and they are, therefore, excluded.

## II. Motion for Summary Judgment

### A. Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues

-11-

that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### B. Analysis

Plaintiff, Deborah Galoski brought this suit on behalf of herself and others similarly situated to recover damages arising from the purchase of an allegedly defective product. She alleges breach of express warranty, claiming that these devices do not, and cannot, repel pests under any circumstances, "no matter where they are placed or how they are used." (ECF #59 at 19). She claims that this product "provides no benefits whatsoever even when operating as it is designed to." (ECF #59 at 2).

To establish a claim for breach of express warranty under Ohio law, the plaintiff must prove the following elements: (1) the item in question was subject to a warranty; (2) the item did not conform to the warranty; (3) the seller was given a reasonable opportunity to cure any defects; and (4) the seller failed to cure the defects within a reasonable period of time or after a reasonable number of attempts. *Temple v. Fleetwood Enters, Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005). Defendant does not dispute that the packaging of the device at issue created an express warranty. Rather, they allege that Plaintiff has failed to present any admissible evidence that could show that the product failed to conform to this warranty.

Plaintiff has alleged that the product failed to conform to the warranty due to a design defect. She has claimed, since the inception of this litigation, that the product, as designed, is not capable of performing its function, under any circumstances. For the same reasons that Ohio law requires

-12-

expert testimony to prove a design defect in certain products liability cases, expert testimony is required in this case to show that the Applica ultrasonic pest repeller is universally incapable of repelling pests as warranted on their packaging. When the "inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill." a plaintiff must present expert testimony in order to meet his or burden of proof. *Jones v. Hawkes Hosp. Of Mt. Carmel,* 175 Ohio St. 503, 196 n.E.2d 592, paragraph one of the syllabus. (1964); see also, *Stacey v. Carnegie-Illinois Steel Corp.*, 156 Ohio St. 205, 201, 101 N.E.2d 897 (1951). Expert testimony is especially required "when the subject matter involves a question of scientific inquiry which is not within the knowledge of the lay witnesses or members of the jury." *Adkins v. Yamaha Motor Corp.*, U.S.A., 17 N.E.3d 654, 661 (Ohio App. Ct. 2014); *see also, McGrath v. General Motors Corp.*, 26 Fed. Appx. 506, 511 (6th Cir. 2002); *Mohney v. USA Hockey, Inc.*, 300 F.Supp.2d 556, 577 (N.D. Ohio 2004); *Steigerwald* at *9. The question of whether the technology contained in Applica's ultrasonic pest repeller actually has a repellant effect on the insects, arachnids, and mammals listed on the product packaging is a highly technical question of science which is not within the knowledge of lay witnesses or the jury. Therefore, because Plaintiff's expert did not present any opinion testimony that was sufficiently supported by reliable scientifically based knowledge, she has no evidence to show that the product, as designed, is incapable of repelling pests as warranted on the product packaging.

Plaintiff contends that even without expert testimony, she has presented sufficient evidence of a breach of warranty to withstand summary judgment. She cites to customer complaints, her own

testimony, the FTC warnings to other manufacturers, and Defendant's own testing information. Even if expert testimony were not required, customer complaints, and the testimony of Ms. Galoski, herself, are insufficient as a matter of law to show that these products are incapable of performing as warranted, under any circumstances, due to their design. The fact that two individuals did not obtain the expected results, and complained to the company is not sufficient evidence of a overriding design defect in the product. This is especially true where the parties agree that there is evidence that almost a million Applica devices were sold over the class period. (ECF #55 at 4, Ex. A: Provolo Dep. Ex. 2). Ms. Galoski's allegations that she saw a single dead mouse and some spiders following use of the product is also not evidence of a product wide design defect. Further, as set forth in more detail above, the FTC warning and the alleged inconsistency in the Defendant's testing results are not sufficient evidence that the product did not and could not work under any circumstances. There is no evidence to show that the FTC warnings were aimed at the Applica product, or even at a product with the same features and specifications. Further, there is no scientific evidence to show that the allegedly conflicting results within Defendant's studies were due to a design failure in the product. Thus, there is insufficient evidence upon which a jury could find that Plaintiff has met her burden of proving, by a preponderance of the evidence, that the Applica ultrasonic pest repeller is incapable of repelling pests as warranted in their packaging claims.

### III. Conclusion

For the reasons set forth above, Defendant's Motion to Exclude the Testimony of Dr. Roger Goldberg (ECF #99) is GRANTED. Defendant's Motion for Summary Judgment is also GRANTED. (ECF #100). Judgment is hereby entered in favor of Defendant, and this case is dismissed with prejudice. IT IS SO ORDERED.

      /s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:  May 24, 2017